# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

LINWOOD EDDLETON,

    Petitioner,

v.                                                                                                             Civil Action No. 3:09cv352

GENE M. JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Linwood Eddleton, a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By Memorandum Opinion and Order entered on March 19, 2010, the Court dismissed the two claims contained in Eddleton's § 2254 Petition and directed Eddleton to replead any claims for habeas relief contained in the Memorandum of Law that accompanied his § 2254 Petition.[1] Thereafter, Eddleton filed a revised version of the claims in his Memorandum of Law. Respondent filed a Supplemental Rule 5 Answer (Docket No. 29) and Supplemental Motion to Dismiss (Docket No. 28) and provided Eddleton with appropriate *Roseboro*[2] notice (Docket No. 31). For the reasons that follow, the

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

    The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Court will GRANT IN PART and DENY IN PART Respondent's Supplemental Motion to Dismiss. (Docket No. 28.)

## I. Procedural History

### A. Trial and Direct Appeal

On May 23, 2006, after a bench trial, the Circuit Court for the County of Henrico ("Circuit Court") found Eddleton guilty of burglary, grand larceny, and possession of a firearm by a convicted felon. Eddleton appealed his conviction. On appeal, Eddleton claimed that the evidence was insufficient. The Court of Appeals of Virginia denied his appeal. In denying his appeal, the Court of Appeals of Virginia aptly summarized the evidence of Eddleton's guilt as follows:

> Sally Kidd returned home from work one morning to discover that a dish, a pillow, a gun, a DVD player, a camera, and a drill were missing from her home and that a bathroom window was broken with the curtain pulled aside. Police found blood on a toilet seat in the bathroom.
> A forensic expert testified that a sample of appellant's DNA "cannot be eliminated as a contributor to the DNA profile" obtained from the blood. She stated that, "[t]he probability of randomly selecting an unrelated individual matching that developed from the [blood] is approximately one in greater than six billion." Also, an investigator testified that, when he questioned appellant, appellant provided the investigator with specific details of the crime; appellant knew, for example, that the burglar entered through a side window, that the house was in the middle of the block, and that a gun was stolen.
> Appellant contends his fingerprints were not found anywhere in the house or on the stolen gun and no eyewitnesses placed him at the scene. Nonetheless, the DNA evidence and the investigator's testimony were sufficient to prove beyond a reasonable doubt that appellant committed the offenses.

*Eddleton v. Commonwealth*, No. 2171-06-2, 1-2 (Va. Ct. App. Feb. 14, 2007). Eddleton thereafter petitioned the Supreme Court of Virginia for an appeal. On September 10, 2007, the Supreme Court of Virginia refused Eddleton's petition for appeal.

2

B. <u>State Habeas</u>

On September 9, 2008, Eddleton filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. In that petition, Eddleton asserted that he was entitled to relief upon the following grounds:

| | |
|---|---|
| Claim A | Petitioner was denied the effective assistance of counsel.<br>(1) Counsel was not adequately prepared for trial.<br>(2) Counsel failed to provide Petitioner with a motion for discovery.<br>(3) Counsel failed to file a motion to suppress. |
| Claim B | "I was not represented nor tried according to constitutionally [sic] standards when there was neither evidence supporting the charge of possession of a firearm, or a defense mounted against the same." (Respt.'s Br. in Supp. of Mot. to Dismiss Attach. 6 ("State Habeas Pet.") Attach. A, 1.) |
| Claim C | "There is a blatant violation of my constitutional right to a due process - and more specifically my Miranda rights." (State Habeas Pet. Attach A, 3.) |
| Claim D | "Appeal counsel was ineffective and refused to represent me to constitutionally acceptable standards when she refused to advocate my position or argue the sufficiency of the evidence on the firearm alone." (State Habeas Pet. Attach A, 4.) |

On January 8, 2009, the Supreme Court of Virginia received from Eddleton what appears to be a copy of Eddleton's state Presentence Report. Eddleton directed the Supreme Court of Virginia's attention to the section of the report that provided a "Narrative of the Current Offense," which reads as follows:

> According to the police report filed with the Commonwealth Attorney's office, between October 17, 2004 and October 18, 2004, the subject gained entry into the victims' home by breaking in, and going through, a bathroom window. After having broken into the home, the subject stole a .40 caliber Ruger handgun, DVDs, and a pillow. While entering through the window, the subject *cut himself on a piece of glass which was collected by the police and sent to the forensic laboratory for testing.* Results from the laboratory showed a match of the DNA in the blood to that of the DNA of the subject, which was on file as the subject had previously been

3

> convicted of a felony. After being arrested on December 5, 2005, the subject confessed committing the crime to police. Another sample of DNA was obtained from the subject with a direct comparison being made to that found at the scene. The comparison came back as a positive match.

Pet'r's Jan. 8, 2009 Submission, *Eddleton v. Dir. Dep't Corr.*, No. 081880 (Va. Mar. 19, 2009) (emphasis added by Eddleton). With respect to the emphasized language, Eddleton hand-wrote:

> This don't add up or match what's said in my transcript about blood. It's 2 different stories from the police about the found DNA and plus they didn't even keep the toilet seat as *evidence* so I could get my own analysis of it with a paid lawyer. if I would have retained one. I am entitled to my own analysis, but they didn't keep the t. seat as evidence.

*Id.* (capitalization corrected). The Supreme Court of Virginia construed the foregoing document as a request to supplement the state petition for a writ of habeas corpus and denied the same. Order dated Feb. 3, 2009, *Eddleton*, No. 081880 (Va. Mar. 19, 2009).

On March 19, 2009, the Supreme Court of Virginia denied Eddleton's petition for a writ of habeas corpus. *Eddleton*, No. 081880 (Va. Mar. 19, 2009).

### C. Federal Habeas Proceedings

#### 1. Claims in the Original § 2254 Petition

On June 4, 2009, the Court received Eddleton's PETITION FOR WRIT OF HABEAS CORPUS ("§ 2254 Petition"), which was accompanied by a MEMORANDUM OF LAW IN SUPPORT ("§ 2254 Memorandum of Law"). In the § 2254 Petition, Eddleton asserted that he was entitled to relief upon the following grounds:

| | |
|---|---|
| Claim 1 | "Counsel was ineffective for failure to investigate and file suppression motion pursuant to statements of possessing a firearm." |
| Claim 2 | "Counsel was in possession of impeachment evidence and failed to present at pretrial or jury trial." |

4

(§ 2254 Pet. 3.) Eddleton did not recite any facts in the § 2254 Petition to support these claims. Respondent moved to dismiss Claim One for lack of merit and Claim Two as unexhausted and procedurally defaulted. By Memorandum Opinion and Order entered on March 19, 2010, the Court dismissed Claim One for lack of merit. *See Eddleton v. Johnson*, No. 3:09cv352, 2010 WL 1039828, at *5 (E.D. Va. Mar. 19, 2010). The Court found that Claim Two was exhausted and procedurally barred under section 8.01-654(B)(2) of the Virginia Code.[3] *Id.* at *3.

In the § 2254 Memorandum of Law, Eddleton made a number of discursive arguments as to why counsel performed deficiently. In the March 19, 2010 Memorandum Opinion and Order, the Court provided Eddleton with an opportunity to replead the allegations in the § 2254 Memorandum of Law as claims for federal habeas relief in accordance with the Court's instructions. *See id.* at *5. The Court further directed Respondent to address Eddleton's particularized claims and provide the Court with a complete copy of Eddleton's habeas proceedings before the Supreme Court of Virginia.[4] As explained below, a review of Eddleton's January 8, 2009 attempt to supplement his state habeas petition along with the particularized version of Eddleton's claims reveals that the dismissal of Claim Two as procedurally defaulted was premature. *See infra* Part II.B.

---

[3] That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2) (West 2010).

[4] Respondent attached copies of documents from Eddleton's state habeas proceeding to the original motion to dismiss. Respondent, however, did not provide the Court with a copy of Eddleton's January 8, 2009 attempt to supplement his state habeas petition.

## 2. Eddleton's Particularized Claims

On April 26, 2010, the Court received Eddleton's particularized claims for habeas relief.

(Amend. § 2254 Pet.) Eddleton's claims, with the supporting facts, are as follows:

Ground One    Counsel was ineffective for failure to investigate pursuant to incriminating false statements by officers[.]

On the day of December 5, 2005, Petitioner walked into the police station after hearing there was a warrant out concerning petitioner. Invest[i]gator Kopacki escorted petitioner to the interrogation room and read petitioner his Miranda Rights. Petitioner advised the investigator that he didn't wish to say anything and requested to be processed so bail could be issued. While hand-cuffed, investigator Kopacki took a swab sample while holding the petition[er] never admitted anything concerning burglary or possessing a gun. Counsel failed to investigate incriminating false statements that Investigator Kopacki alleged petitioner made during questioning. Petitioner never admitted to possessing a gun and never gave statements to either investigators Kopacki nor Officer J.Guess. Petitioner requested a suppression hearing to su[p]press statements that alleged that petitioner actually possessed the gun. The alleged gun was discovered accross [sic] town in a stolen car four months after the burglary[.]

. . . .

Petitioner was prejudiced by counsel's non-tactical choice to forego a suppression hearing to exclude the commonwealth's confession evidence. Petitioner told counsel that the police lied pursuant to petitioner making any statements relating to a burglary or gun possession. Petitioner was never apprised of the contents of the discovery evidence and the alleged confession until trial commenced.

(Amend. § 2254 Pet. 6–6(b).)

Ground Two[5]    Counsel was ineffective for failure to submit impeachment evidence pursuant to police report[.]

Henrico Police Investigator Eric McMillen was working property crimes on the day in question when he received a call to respond to Ms. Kidds residence for a reported breaking and entering. Investigator McMillen found that entry into the house had been gained through a side window into a bathroom. He found what appeared to be blood on the toilet seat of the bathroom. He collected some of the blood and submitted it to state lab for analysis. No blood was found on the

---

[5] In Ground Two, Eddleton repeatedly references a police report. Eddleton has not attached a copy of the police report to his submissions. Rather, he relies upon the Presentence Report he submitted to the Supreme Court of Virginia which purports to paraphrase a police report.

windowsill, glass or anywhere else in the house, (Tr.13-14), the case was unsolved for a year.

The DNA of the blood sample taken from Ms.Kidds toilet seat was compared with the buccal swab sample of petitioner's saliva. The lab tech comparing the two DNA profiles concluded that petitioner could not be eliminated as a contributor of the blood found on the toilet seat of Ms.Kidd's bathroom. As a result of the blood analysis, petitioner was charged with breaking into Ms.Kidd's home and possession of firearm.

During trial, the primary case in chief by the commonwealth relied on the two critical pieces of evidence. 1) DNA evidence that was allegedly taken off the toilet seat. Exihibit [sic] ICR#041018055; statements allegedly confessing the crime made during interrogation at the police department.

Counsel error relies in not challenging the custody-chain of evidence pursuant to the taking of blood samples at the crime scene. Counsel never fully investigated the chain of custody following how the blood sample was obtained, stored, logged and transported.

. . . .

Counsel error in not using the police report that revealed no blood was found on the toilet seat but alleged blood was found on a piece of broken glass. The police report should have been used to suppress evidence or impeach inconsistent statements rendered at trial pursuant to exculpatory evidence. This evidence would have went to material fact of the commonwealth case. Counsel failure to use exculpatory evidence made his performance fall below an objective standard of reasonableness. *Strickland*, 466 U.S. 687-88 (1984).

. . . .

During trial, the commonwealth proffered testimony by the first officer at the scene Eric McMillen who stated, "after searching the area where the bathroom was, we found on the toilet seat what appeared to be blood on the toilet seat. Tr.11-12p. Officer Eric McMillen further testified that the sample he took from the house was submitted to the lab and no other blood was found anywhere else". Tr.13p. [1-25]. The exculpatory police report evidence stated that "while entering through the window, the subject cut himself on a piece of glass which was collected by police and sent to the forensic laboratory for testing". "results from the laboratory showed a match of the DNA in the blood to that of the DNA of the subject, which was on file as the subject had previously been convicted of a felony."

. . . .

It was no dispute that Officer Eric McMillen and Investigator Kopacki testified that the only blood sample they sent to the lab was a stain sample from a toilet se[a]t at the crime scene. It is no dispute that the exculpatory evidence factually stated that the only blood sample came from a piece of glass which was collected by police and sent to the forensic laboratory for testing. There was no tactical consideration justifying counsel's failure to challenge the chain of custody pursuant to no blood sample was alleged to have been taken form the toilet seat. The alleged

7

Certificate of Analysis dated October 13, 2005 was in total dispute toward the testimony of commonwealth witness Sarahoger Seahols, scientist with the Department of Forensic Science, testified that the evidence submitted by the Invetsigators [sic] McMillen and Kopacki, lab case #C04-19064 was analyzed against the buccal swab that was taken December 5, 2005. Seahols did not match the sample DNA profile against a data bank, but developed a DNA profile from the buccal swab submitted by Mr.Kopacki. Tr.15p.[1-25]. The results against the Virginia DNA Data Bank and found to be consistent with petitioner. Nothing intrinsic in Ms.Seahols testimony pursuant to the DNA evidence made the exculpatory evidence so manifestly unreliable or specifically irrelevant to the chain of evidence issue central to petitioner's defense that counsel's failure to use it could be deemed justified without a chain of custody hearing. Officer McMillen's own testimony forms contradiction of the collected sample, making the chain of custody tainted.

Therefore, counsel inexplicably had failed to recognize the significance of, hence to proffer in petitioner's defense, facially exculpatory evidence that would have resulted in the DNA evidence being suppressed".

(Amend. § 2254 Pet. 7-8(d).)

## II. Analysis of Eddleton's Particularized Claims

### A. Ground 1

Ground 1 is largely identical to Claim 1, which was rejected by the Court in its prior opinion. *See Eddleton*, 2010 WL 1039828, at *4-5 (E.D. Va. Mar. 19, 2010). Accordingly, Ground 1 will be DISMISSED for the reasons previously stated by the Court.

### B. Ground 2

Ground 2 essentially consists of the following separate grounds for relief:

| | |
|---|---|
| Ground 2(a) | Counsel should have utilized the police report to impeach the testimony of the prosecution's witnesses. |
| Ground 2(b) | Counsel should have challenged the chain of custody and moved to suppress the DNA evidence based on the police report. |

8

The Court previously concluded that the impeachment aspect of Ground 2 was unexhausted and procedurally defaulted. As explained below, however, while Grounds 2(a) and 2(b) are unexhausted, Respondent fails to demonstrate these grounds for habeas relief are procedurally defaulted.

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all "available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state's courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541

9

U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105 F.3d at 911). Moreover, "[f]air presentation mandates that the federal claim 'be presented face-up and squarely . . . . Oblique references which hint that a theory may be lurking in the woodwork will not suffice.'" *Id.* (omission in original) (*quoting Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (*citing Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[6]

---

[6] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Eddleton did not present Grounds 2(a) or 2(b) "'face-up and squarely'" to the Supreme Court of Virginia. *Gray*, 99 F.3d at 166 (*quoting Mallory*, 27 F.3d at 995). Although during his state habeas proceedings Eddleton noted some factual discrepancies between the trial testimony and a police report regarding where his blood was found at the scene, Eddleton did not claim that counsel was deficient for failing to attempt to impeach the prosecution's witness with the police report or for failing to challenge the chain of custody related to the DNA evidence. *See Pethtel v. Ballard*, 617 F.3d 299, 307 (4th Cir. 2010) (noting "[a] habeas petitioner cannot simply apprise the state court of the facts underlying a claimed constitutional violation, the petitioner must also explain how those alleged events establish a violation of his constitutional rights" (alteration in original) (*quoting Mallory*, 27 F.3d at 994)). Such an omission precludes a finding that Eddleton fairly presented Grounds 2(a) or 2(b) to the Supreme Court of Virginia. *Gray*, 99 F.3d at 162 ("A statement of facts sufficient to support a constitutional claim without reference to the legal basis for that claim is not sufficient." (*citing Picard*, 404 U.S. at 277)). Accordingly, Grounds 2(a) and 2(b) are not exhausted.

Respondent argues that if Eddleton were now to attempt to present Grounds 2(a) and 2(b) to the Supreme Court of Virginia, that court would find Grounds 2(a) and 2(b) procedurally barred pursuant to section 8.01-654(B)(2) of the Virginia Code. That statute provides, in pertinent part, that a petition for a writ of habeas corpus "shall contain all allegations the facts of

which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. 8.01-654(B)(2) (West 2010). Thus, for this bar to apply, Respondent must demonstrate that Eddleton knew the facts that supported Grounds 2(a) and 2(b) before he filed his state habeas petition on September 9, 2008. *Jones*, 591 F.3d at 716 (citing cases for the proposition that the state bears the burden of proving procedural default). Respondent has not done so.

As best as the Court can discern, Eddleton discovered the facts giving rise to Grounds 2(a) and 2(b) when he received a copy of the Presentence Report which referenced "a police report filed with the Commonwealth Attorney's office" that purportedly stated, "While entering through the window, the subject *cut himself on a piece of glass which was collected by the police and sent to the forensic laboratory for testing.*" Pet'r's Jan. 8, 2009 Submission, *Eddleton v. Dir. Dep't Corr.*, No. 081880 (Va. Mar. 19, 2009) (emphasis added by Eddleton). Although Eddleton obviously obtained a copy of the Presentence Report during the course of his state habeas proceeding, because he attempted to supplement his state habeas petition by filing a copy of the same with the Supreme Court on January 8, 2009, the record does not indicate that Eddleton possessed the Presentence Report "at the time of filing" his state habeas petition on September 9, 2008. Va. Code Ann. § 8.01-654(B)(2). Indeed, Eddleton swears that his January 9, 2009 filing with the Supreme Court of Virginia was prompted by "a Police Report that was discovered after the [state] habeas corpus was filed." (§ 2254 Pet. ¶ 9.) Given these circumstances and the current state of the record, Respondent fails to demonstrate that Grounds 2(a) and 2(b) would be barred by section 8.01-654(B)(2) of the Virginia Code. *See James v. Sheriff, City of Richmond*, No. LA-419, 1995 WL 1056010, at *2 (Va. Cir. Oct. 25, 1995)

(refusing to apply § 8.01-654(B)(2) where no evidence indicated petitioner was aware of facts supporting his current claim for habeas relief at the time he filed the prior habeas petition). Accordingly, the supplemental motion to dismiss Grounds 2(a) and 2(b) will be DENIED.

### III. Conclusion

Respondent's Supplemental Motion to Dismiss (Docket No. 28) will be GRANTED IN PART and DENIED IN PART. Ground 1 will be DISMISSED. Those aspects of the Court's March 19, 2010 Memorandum Opinion and Order that dismissed Eddleton's claim that "Counsel was in possession of impeachment evidence and failed to present at pretrial or jury trial" (§ 2254 Pet. 3) will be VACATED.

Within thirty (30) days of the date of entry hereof, Respondent shall file a further response addressing Grounds 2(a) and 2(b). Such response shall address the merits of Grounds 2(a) and 2(b). Respondent is free to pursue arguments that Grounds 2(a) and 2(b) are procedurally defaulted, provided such arguments are supported by adequate legal and factual support. Additionally, Respondent shall promptly arrange to have the entire original Circuit Court record transported to this Court. Such record should include the exhibits that were introduced at Eddleton's trial and the Presentence Report. Also, Respondent shall expand the record to include an affidavit from Eddleton's trial counsel, Chris Collins, Esquire. *See* Rule 7(a), Rules Governing § 2254 Cases in the U.S. District Courts. In the affidavit, Collins must respond to Eddleton's contentions in Grounds 2(a) and 2(b). Respondent shall arrange to obtain Collins's affidavit and to transmit the same to the Court. Respondent's response should provide the appropriate *Roseboro* notice to Eddleton.

An appropriate Order shall issue.

/s/ 
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: /-20-11

13